712 So.2d 1189 (1998)
Deena DYKES, Appellant,
v.
Paul Kevin DYKES, Appellee.
No. 97-2741.
District Court of Appeal of Florida, First District.
June 17, 1998.
*1190 Garrett N. Barket, Jacksonville, for Appellant.
Kelly B. Mathis of Gobelman and Love, Jacksonville, for Appellee.
JOANOS, Judge.
Appellant, the former wife in this domestic relations case, appeals an order in which the trial court modified the final judgment of dissolution of marriage, and established the former wife's child support obligation. The issues presented for review are: (1) the requirement that the non-custodial former wife pay child support, (2) the reduction in the amount of alimony which the former husband is required to pay, and (3) the determination of alimony arrearage. We affirm in part and reverse in part.
The final judgment of dissolution of marriage was entered October 5, 1995. The parties to this action are the parents of seven children, six of whom are still minors. Among other things, the final judgment sets forth the trial court's specific finding that the parties to this cause have limited resources. In this regard, the trial court found that although the wife's income was minimal at the time of entry of the final judgment, she was capable of earning minimum wage, and imputed an approximate net income of $200.00 per week to the former wife. The court also found the parties had been married more than fourteen years, "and the Wife needs, and the Husband has the ability to pay, permanent, periodic alimony to the Wife in the amount of $250.00 per week." Primary residential custody of the children was placed with the former husband, with shared parental responsibility and liberal visitation to be afforded the former wife. The court awarded the marital home and furnishings to the former husband, but required him to pay the mortgage, taxes, and insurance, and to hold the former wife harmless from these costs. The court awarded the husband sole ownership of the parties' floor-installer business, because the business would be the source for payment of alimony, child support, and the parties' joint debts. The former wife was awarded a 1991 Ford; the former husband was awarded a Dodge van, business equipment, and tools.
The decretal portion of the final judgment states in pertinent part:
3. The Wife shall pay no child support at the present time. The Court specifically reserves jurisdiction to impose reasonable *1191 child support upon a changed circumstance.
4. The Husband shall pay to the Wife as and for permanent, periodic alimony the sum of $250.00 per week, beginning Friday, October 6, 1995 and a like amount each and every Friday until the Wife remarries or dies....
The trial court also made the former husband responsible for payment of the marital debt, and reserved jurisdiction for enforcement or modification of any provision of the final judgment.
Following the October 1995 dissolution of the parties' marriage, the former wife filed numerous motions for contempt orders, alleging the former husband failed to keep his weekly alimony payments current. During the course of almost continuous post-judgment litigation, the former husband was ordered to pay $100.00 monthly toward the attorney's fee incurred by the former wife. On January 8, 1996, the former husband was current in his alimony obligation, but by April 1996, the trial court found the former husband in willful contempt for failure to pay alimony since January 19, 1996. The court found the former husband had an income greater than $45,000.00 to $50,000.00 annually, with the ability to earn more. The court further found the former husband failed to pay the wife's attorney's fees as ordered; he intentionally withheld visitation and telephone contact between the children and their mother; and despite having the ability to do so, the former husband failed to keep payments current on the wife's vehicle and the marital debts he was ordered to pay. The trial court granted the motion for contempt, and ordered the former husband incarcerated with the ability to purge himself of contempt upon immediate payment of $1,000.00 to be applied to the alimony arrearage, plus payment of the costs of incarceration. In addition, the former husband was ordered to pay $300.00 toward the attorney's fee arrearage, plus an additional $500.00 for the services of the former wife's attorney in bringing the motion for contempt; to comply with the terms of visitation and to provide the wife telephone access to the children; and, to pay the arrearage on the wife's vehicle and not permit it to go into repossession.
On May 17, 1996, the former wife filed her fifth motion for a contempt order, alleging, among other things, that the former husband had failed to make twenty weekly alimony payments, resulting in an arrearage in the amount of $5,000.00. The motion further alleged the former husband failed to pay attorney's fees as previously ordered; failed to pay mortgage payments causing the former wife and her attorney to be sued by the lender, thereby incurring costs, attorney's fees, and exposure to liability; and failed to pay marital debts and changed the ownership title of his recently-acquired sports car to his live-in girl friend.
On June 6, 1996, the former husband filed a motion to reduce or terminate alimony and a motion for child support. The former husband alleged he had been unable to work since April 1996, because he did not have the $2,000.00 required to make truck repairs. He further alleged that due to expenses during and following the divorce, his savings were depleted; he had been unable to find gainful employment and had received no income since May 9, 1996; he had been forced to apply for food stamps and AFDC; he was financially unable to pay alimony at that time; and the former wife was able to pay child support. In June 1996, the trial court entered an order granting the wife's fifth motion for contempt.
On October 4, 1996, the former husband filed a petition for modification of alimony and child support, and in February 1997, he filed a motion for temporary child support. In her amended answer to the petition for modification of alimony and for child support, the former wife alleged the former husband intentionally divested himself of the ability to earn the amount of income he previously earned, so as to avoid his alimony obligations. On March 18, 1997, the trial court awarded the former husband temporary child support in the amount of $62.51 per week.
According to the trial court's findings of fact, which this court has denominated an approved statement of the facts, the alimony awarded by the final judgment comprised forty-five percent of the husband's actual net *1192 income. The court found the former husband was ordered to pay accumulated marital debt in the amount of $18,000.00, and to pay attorney's fees for the wife. The court stated the husband testified he fell behind in his alimony payments, due to his financial inability to pay his bills and to provide food and clothing for the children, "without child support assistance." During the time the husband was jailed for contempt, he lost his job and his tools were stolen. The former husband testified his home was in foreclosure; the court judicially noticed the pleadings relating to the foreclosure.
The former wife testified that she was working two part-time jobs, in order to average forty hours of work per week. She said she could not find better full-time employment, because her automobile was repossessed when the husband failed to make payments as required in the final judgment. She also testified that her credit was destroyed, and she could not obtain a new vehicle. She attempted to take college courses but was unable to complete them, because she had to care for the children while the husband was incarcerated for failing to pay alimony. The former wife maintained she could not afford to pay child support and survive.
In the June 6, 1997, modification order, the trial court found the former husband had a current net monthly income of $1,493.00, and the former wife had a current net monthly income of $691.00. As the non-custodial parent, the former wife's total child support obligation for six children under the age of majority was determined to be $88.00 per week. Based on the former wife's limited financial means, the trial court found she was entitled to a twenty percent downward modification from the child support guidelines, and established her child support obligation as $70.00 per week. The trial court further found the former husband had a limited present ability to pay alimony, and set permanent alimony at $25.00 per month from October 4, 1996, the filing date of the petition for modification of alimony and child support. The court also adjusted the pre-petition alimony arrearage to $5,000.00. In addition to the adjusted monthly alimony of $25.00 per month, the former husband was ordered to pay $15.00 monthly toward the arrearage established by the trial court.
The wife filed a motion for rehearing, alleging in part, that the court erred in setting alimony arrearage at $5,000.00. The motion further states the wife introduced a Domestic Relations Depository readout showing the husband owed a total of $15,600.05, as of May 7, 1997; and with the reduction ordered by the court, the arrearage through June 30, 1997, should be $8,063.05. The former wife's motion was summarily denied by an order entered June 11, 1997.
The child support question in this case is whether the trial court properly ordered the former wife to pay child support. The final judgment provided for shared parental responsibility, with primary residential custody awarded to the father. The non-custodial mother was not ordered to pay child support at the time of the final judgment, but the court expressly reserved jurisdiction to impose reasonable child support upon a "changed circumstance."
Child support is considered an obligation which parents owe to their children, rather than to each other. See Evans; Walker. The designation of the father as the custodial parent does not abrogate the duty of the non-custodial mother to pay support. See Condon v. Condon, 295 So.2d 681, 683 (Fla. 1st DCA 1974); Birge v. Simpson, 280 So.2d 482 (Fla. 1st DCA 1973).
The record in this case indicates the mother either was unemployed, or was minimally employed, when the final judgment was entered. The mother's situation at that time made it unlikely she would be able to provide suitable housing for her seven children. In the two years since entry of the final judgment, the father's income has been reduced, due, in part, to his incarceration for contempt for failing to make all of the required alimony payments. The mother has obtained two part-time jobs which equate to full-time employment, and she is now earning the amount of money formerly imputed to her in the final judgment. In addition, the mother presently has housing with a male friend, at little or no expense to herself. The *1193 order modifying alimony and establishing child support is the first time child support has been ordered. Since the record in the instant case reflects the existence of the "changed circumstance" contemplated in the final judgment as a basis to revisit the question of the mother's obligation to pay child support, and that "changed circumstance" is of sufficient magnitude, we conclude the trial court acted within its discretion in ordering the non-custodial mother to pay child support to the custodial father.
The second issue raised in this appeal is the trial court's reduction in the amount of alimony from $250.00 per week to $25.00 per month. The party seeking modification in the amount of alimony ordered in the final judgment must show (1) a substantial change in circumstances since the date of the final judgment; (2) the change was not contemplated at the time the amount of alimony was set; and (3) the change is sufficient, material, involuntary, and permanent in nature. See Pimm v. Pimm, 601 So.2d 534, 536 (Fla. 1992); Mastromonico v. Mastromonico, 685 So.2d 74, 76 (Fla. 1st DCA 1996).
In determining whether to reduce an alimony award, the trial court should consider the parties' relative financial circumstances at the time of entry of the final judgment, compared with the parties' relative financial circumstances when the petition for modification was filed. See Mastromonico, 685 So.2d at 75-76. In addition, the trial court should consider the value of benefits the recipient spouse is being provided by a friend, as well as any change in the parties' respective earnings. See Pill v. Pill, 583 So.2d 1114 (Fla. 5th DCA 1991). Alimony may not be reduced merely because the petitioner seeking the reduction has voluntarily incurred new financial obligations which make it difficult to meet his or her alimony obligations. See Cowie, 564 So.2d at 535.
The trial court's decisions on a petition for modification of alimony are binding on the appellate court, unless no reasonable trial judge would take the view adopted. See Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980); Landry v. Landry, 436 So.2d 353 (Fla. 1st DCA 1983); Cowie v. Cowie, 564 So.2d 533, 534-535 (Fla. 2d DCA 1990).
Appellant in this case correctly asserts that the trial court found the former husband's failure to pay alimony to be willful and intentional, which finding was not appealed. Appellant further contends that the former husband's financial woes flowed from his incarceration for contempt, thus his financial problems could be viewed as voluntary. Although the theft of the former husband's tools reasonably could be attributed to his incarceration for contempt, there is nothing in the record to suggest the blown truck motor was contrived by the former husband. The record also reflects that the former husband sustained a fifty percent decrease in income. In contrast, the former wife's income increased from nothing[1] to a current net monthly income of $691.00, and it appears she has little or no expense for housing and transportation.[2]
Because we believe reasonable persons could differ as to whether the former husband's current financial difficulties were entirely voluntary, we conclude the trial court did not abuse its discretion in ordering a reduction in the former husband's alimony obligation.
The final issue concerns the trial court's unexplained reduction of the alimony arrearage. Past-due installments of alimony become vested property rights of the recipient. See Kennedy v. Kennedy, 464 So.2d 1289, 1292 (Fla. 1st DCA 1985). A trial court is not authorized to modify the arrearages involving alimony installments due and owing prior to the filing of a petition for modification. See Brisco v. Brisco, 355 So.2d 506, 508 (Fla. 2d DCA 1978); Steinau v. Steinau, 343 So.2d 631, 632 (Fla. 4th DCA 1977). Accord Van Loon v. Van Loon, 132 Fla. 535, 182 So. 205 (1938); State, Department of *1194 Revenue v. Screws, 688 So.2d 391, 392 (Fla. 2d DCA 1997); Burdick v. Burdick, 601 So.2d 632, 634 (Fla. 4th DCA 1992)(reversible error to discharge support arrearages which accumulated prior to filing of petition for modification).
In this case, the order of modification states in part: "The Court adjusts the pre-petition arrearage to be $5,000.00." (emphasis supplied). Since the pre-petition alimony arrearages became a vested property right of the wife, the trial court erred in reducing the alimony arrearages which were already due prior to the date of the petition for modification.
In summary, we find no abuse of discretion in the trial court's decision to order the former wife to pay child support, and to reduce the amount of the former husband's permanent alimony obligation. However, we conclude the reduction of the pre-petition alimony arrearage constituted error, and reverse as to this issue.
Accordingly, we affirm those portions of the appealed order which modify the amount of alimony, and which establish the former wife's child support obligation. We reverse that portion of the order which purports to establish the alimony arrearage at $5,000.00, and remand the cause for a determination of the pre-petition arrearage, to be computed with the monthly post-petition arrearage, calculated from October 5, 1996, to the present.
MINER and WEBSTER, JJ., concur.
NOTES
[1] Although income was imputed to the former wife in the final judgment, the trial court could reasonably consider that such imputed income did not translate into living expenses for the former wife at that particular time.
[2] The former wife testified that she was renting a room in the home of a male friend, and a friend provided her with use of an automobile.