901 So.2d 217 (2005)
Rolendia YANGCO, Appellant,
v.
Bienvenido YANGCO, Appellee.
No. 2D04-1899.
District Court of Appeal of Florida, Second District.
April 13, 2005.
Rehearing Denied May 20, 2005.
*218 Virginia R. Vetter, Tampa, for Appellant.
S. David Anton of S. David Anton, P.A., Tampa, for Appellee.
SILBERMAN, Judge.
Rolendia Yangco (the Former Wife) appeals a final order that modifies a final judgment of dissolution of marriage by reducing the alimony obligation of Bienvenido Yangco (the Former Husband) from $2500 per month to $1000 per month. To the extent that the order denies the Former Wife's counterpetition for modification, we affirm. However, we reverse the trial court's reduction of alimony and remand *219 for the trial court to enter an order denying the Former Husband's petition for modification and to consider the Former Wife's request for attorney's fees and costs.
The parties had been married for twenty-three years when they separated in 1995, and a final judgment of dissolution of marriage was entered in 1996. On May 31, 2002, the Former Husband filed a supplemental petition to modify his alimony obligation. The Former Wife filed an answer and counterpetition, seeking an increase in alimony and attorney's fees and costs.
The trial court held the final hearing on the petitions to modify on June 25, 2003, but no court reporter was present. Pursuant to Florida Rule of Appellate Procedure 9.200(b)(4), each party submitted a proposed statement of the evidence, and on March 23, 2004, the trial court entered an order approving and incorporating a statement of the evidence of the final modification hearing. Thus, we have before us a thirteen-page statement of the evidence, along with numerous financial exhibits.
To justify a modification of alimony, the Former Husband had to prove "(1) a substantial change in circumstances; (2) that the change was not contemplated at the final judgment of dissolution; and (3) that the change is sufficient, material, permanent, and involuntary." Rahn v. Rahn, 768 So.2d 1102, 1105 (Fla. 2d DCA 2000) (citing Pimm v. Pimm, 601 So.2d 534, 536 (Fla.1992)). In making an alimony determination, the court is required to consider "[a]ll sources of income available to either party." § 61.08(2)(g), Fla. Stat. (2002).
The Former Husband is a doctor and is the sole shareholder in his medical practice. In the 1996 final judgment, the trial court determined that the Former Husband's "salary and P.A. income, plus Schedule `C' income total approximately $172,322.00 gross. While it appears that the Husband's income may be something less, specifically what the Court cannot state." Although the 1996 judgment did not provide a breakdown of the Former Husband's income, the statement of the evidence notes that the Former Husband's 1996 financial affidavits show that he had $11,626 gross monthly income (which included $750 in employment income and $10,876 in business income) and $7503 net monthly income.
The statement of the evidence also reflects that the Former Husband's financial affidavit of June 23, 2003, shows $7500 gross and $4991 net monthly income; unlike the 1996 affidavits, the 2003 affidavit lists no business income. However, the Former Husband's 2002 tax return shows an annual salary of $90,000 (consistent with the $7500 gross monthly figure) and "Schedule E" business income of $76,610. Of that Schedule E income, $69,221 was from the Former Husband's medical practice (the P.A.); $5164 was from the Infectious Disease Research Institute; and $2225 was from the Oak Tree Medical Center. Thus, according to the Former Husband's 2002 tax return, he had $166,610 in salary and business income. Regarding the $69,221 of P.A. income, Schedule E of the Former Husband's 2002 tax return lists that income as nonpassive income.
In the order now on appeal, the trial court concluded that the Former Husband showed a substantial change in circumstances, justifying modification, because his "income has gone from 172,322 as reflected in the final judgment to $90,000. His gross income has gone from 11,626 to 7,503.00 per month."
The Former Wife argues that the trial court committed reversible error by *220 not considering the Former Husband's business income of $76,610 as part of his total income. She notes that the 1996 final judgment took into account the Former Husband's business income to determine the total amount of the Former Husband's income for purposes of computing alimony, whereas in the modification proceeding the trial court omitted the Former Husband's business income. The Former Wife asserts that the trial court's failure to include the business income resulted in an artificially low income number for the Former Husband, which the court then used to find that the Former Husband had demonstrated a substantial change in circumstances. Had the trial court included the Former Husband's business income, his gross monthly income would have gone from $172,322 in 1996 (or perhaps something less than that as the 1996 judgment observed), to $166,610 in 2002. The Former Wife contends that the Former Husband has failed to establish a permanent, involuntary, substantial change in circumstances. We agree.
The issue of whether the Former Husband's business income should be considered as part of his income for alimony purposes was addressed at the modification hearing. The statement of the evidence reflects that Vincent Walsh, the Former Wife's accounting expert, testified that all Schedule E income "should be considered as income to the Former Husband for alimony computation purposes irrespective of whether or not this income was ever received by the Former Husband or available to him to pay said alimony." Ron Ronz, the Former Husband's expert, testified that the medical practice provided no cash or disposable income to the Former Husband during 2002 over and above what was shown on his W-2 form. Ronz stated that "[a]ny excess monies which the medical practice produced over and above its current expenses were used to pay debt service on current obligations, most particularly on the Oak Tree Center building." The statement of the evidence reflects that the Oak Tree building is the sole asset of Oak Tree Medical Center;[1] the building is not owned by or an expense of the P.A.; and the Former Husband elected to purchase the medical building after the trial court entered the 1996 final judgment of dissolution.
In Smith v. Smith, 575 So.2d 228, 228-29 (Fla. 2d DCA 1991), this court recognized that the trial court is to consider "both salary and business income" in determining a spouse's need or ability to pay. The court noted that the family law financial affidavit "contains a space for entry of `[b]usiness income from sources such as self-employment ... [and/or] close corporations... (gross receipts minus ordinary and necessary expenses required to produce income).'" Id. at 228 (alterations in original) (quoting In re Amendments to Rules of Civil Procedure, 536 So.2d 974, 987 (Fla.1988)); see Fla. Fam. L.R. Form 12.902(c). In Smith, this court reversed and remanded because the husband, an anesthesiologist, did not report the business income from his P.A. on his financial affidavit, and the court did not consider the business income in determining alimony. 575 So.2d at 229.
In Zipperer v. Zipperer, 567 So.2d 916, 917 (Fla. 1st DCA 1990), the court rejected the husband's contention that "interest, dividend and business income should not be attributed to him because he only reports it for tax purposes and, were he to receive it, he would actually suffer a loss." *221 Similarly, the Former Husband seems to argue that his business income is reported on his tax return but should not be attributed to him for alimony purposes because he receives no "disposable income" from it.
Significantly, the trial court included the P.A. income when it determined the Former Husband's income in 1996. The fact that the P.A. income is not "disposable income" because the Former Husband uses it to pay debt voluntarily incurred as a result of his purchase of the medical building does not justify exclusion of that income for purposes of alimony computation. See Dykes v. Dykes, 712 So.2d 1189, 1193 (Fla. 1st DCA 1998) (stating that "[a]limony may not be reduced merely because the petitioner seeking the reduction has voluntarily incurred new financial obligations which make it difficult to meet his or her alimony obligations"). Thus, we conclude that the trial court should have considered the P.A. income, as well as the other Schedule E income, in determining whether there had been a substantial change in the Former Husband's income. Because the trial court excluded the $76,610 of Schedule E income in determining the Former Husband's income, it erroneously concluded that the Former Husband suffered a reduction in income that reflected a substantial change in circumstances.
Other documents support the conclusion that the Former Husband's income did not decrease in a manner that established a substantial change in circumstances. The Former Husband's 1996 financial affidavit shows a gross monthly income of $11,626. This amount includes salary and business income. The Former Husband's 2002 tax return reflects that his gross annual salary and business income is $166,610. This computes to a gross monthly salary and business income of $13,884. After considering the documentary evidence and the statement of evidence, we conclude that the Former Husband failed to show a substantial change of circumstances regarding his income that is "material, permanent, and involuntary" to justify a decrease in his permanent alimony obligation of $2500 per month. See Rahn, 768 So.2d at 1105.
The Former Wife also contends that the trial court should have considered depreciation income and car expenses paid by the P.A. as income to the Former Husband. The trial court did not address these issues in its modification order, and the statement of the evidence and other record evidence is insufficient to discern whether the trial court committed reversible error on these issues. However, these issues are moot based on our determination that the trial court should have included the Schedule E business income in computing to the Former Husband's income. Inclusion of the business income reflects that the Former Husband has not established a basis for a decrease in alimony.
With respect to the trial court's finding that the Former Wife's income had increased from $75 per month to a net monthly income of $1715.82, this was not an unanticipated change. In fact, the 1996 final judgment awarded the Former Wife rehabilitative alimony with the expectation that the Former Wife would be able to earn approximately $25,000 annually within five years. As the trial court recognized in its modification order, the Former Wife's June 2003 financial affidavit reflects a gross monthly income of $2167 and a net income of $1715.82. Annually, her gross income is $26,004 and her net income is $20,589.84. We agree with the Former Wife that there has been no unanticipated change in the Former Wife's income that would support a decrease in alimony.
Therefore, we reverse the trial court's order to the extent that it grants the Former *222 Husband's motion for modification and decreases his alimony obligation. We remand for the trial court to enter an order denying the Former Husband's motion for modification of alimony.
In addition, the Former Wife correctly contends that the trial court failed to address her request for attorney's fees and costs or to reserve jurisdiction to consider that issue. On remand, the trial court shall consider the Former Wife's request for fees and costs. See Green v. Green, 681 So.2d 769, 771 (Fla. 2d DCA 1996).
Affirmed in part, reversed in part, and remanded.
CASANUEVA and WALLACE, JJ., Concur.
NOTES
[1] Oak Tree Medical Center is apparently a limited liability corporation controlled by the Former Husband.