931 So.2d 213 (2006)
Vickie Lee Evans VRIESENGA, Appellant/Cross-Appellee,
v.
Michael Peter VRIESENGA, Appellee/Cross-Appellant.
No. 1D04-3529.
District Court of Appeal of Florida, First District.
June 14, 2006.
*214 Eugene S. Garrett, Esquire, Boca Raton, for Appellant/Cross-Appellee.
Ned I. Price, Esquire and Beth M. Terry, Esquire of the Law Offices of Ned I. Price, P.A., Jacksonville, for Appellee/Cross-Appellant.
BENTON, J.
Vickie Lee Evans Vriesenga appeals an order reducing her alimony from $1200 to $700 a month. The trial court concluded that her former husband, Michael Peter Vriesenga, acted reasonably in retiring from the Air Force, a ruling we do not disturb. He did not seek full-time employment when he separated from the service, however, his relative youth notwithstanding, and the trial court did not evaluate his ability to continue paying alimony under the appropriate standard in the circumstances. Accordingly, we reverse and remand for further proceedings.
After almost eleven years and the birth of a son, the parties' marriage ended on April 1, 1998. He has since remarried a lawyer. She has not remarried. At the time of the dissolution, he was a forty-year-old Air Force major, a navigator and *215 an instructor; at forty-one, she was permanently disabled. The dissolution decree required him to pay $705 per month in child support and $1200 per month in alimony.
In November of 2002, after twenty years' service, he voluntarily[1] retired from the Air Force to work toward a doctorate at Vanderbilt University in pursuit of his "lifelong dream" of teaching at the college level. After resigning his commission to become a full-time student, he filed a petition to modify alimony and child support, arguing that he could no longer afford monthly alimony payments of $1200. She filed a counterpetition seeking increases both in alimony and in child support.[2]
A party who petitions for a change in alimony has the burden to prove a substantial change in circumstances not contemplated at the time of the final judgment, a change that is not only "sufficient" and "material," but is also involuntary and permanent in nature. See Yangco v. Yangco, 901 So.2d 217, 219 (Fla. 2d DCA 2005); Dykes v. Dykes, 712 So.2d 1189, 1193 (Fla. 1st DCA 1998). The statute provides:
When . . . a party is required by court order to make any [alimony] payments, and the circumstances or the financial ability of either party changes . . ., either party may apply to the circuit court. . . in which the order was rendered, for an order decreasing or increasing the amount of support, maintenance, or alimony, and the court has jurisdiction to make orders as equity requires, with due regard to the changed circumstances or the financial ability of the parties or the child, decreasing, increasing, or confirming the amount of separate support, maintenance, or alimony provided for in the . . . order.
§ 61.14(1)(a), Fla. Stat. (2004). Here Mr. Vriesenga has not retired in the sense of leaving the workforce permanently; he is leaving one occupation only to prepare for another. This distinguishes the present case from a typical or true retirement case. Compare Pimm v. Pimm, 601 So.2d 534 (Fla.1992). The present case involves a mid-life change in career or, more precisely, an educational hiatus undertaken in hopes of a career change.
At the hearing, the former wife testified that she was forty-seven years old, had been permanently disabled since June of 1991, and lived with her father and son in her father's house in Jacksonville, Florida. She testified she paid the household expenses and gave her father $150 per month, which she considered "rent," and that, while her father received social security and veteran's disability payments, his medical bills consumed almost all his income.
She had no real estate (or any other assets to speak of) of her own, she testified, but received $554 per month in social security disability payments, had been receiving *216 $1200 per month in alimony, and was supposed to receive $683 per month as her portion of the former husband's pension. She testified that her health insurance cost $432.56 per month, but that it did not cover pharmaceuticals, and that the out-of-pocket cost to her for her basic medications, eyeglasses, and dental expenses was $572.89 per month. She testified that she would not be able to survive without the alimony she had been receiving.
The former husband testified that he had been a high school teacher before his Air Force career, that he hoped to obtain his Ph.D. and teach at the college level, that he would seek a job at a college in Kentucky after obtaining a doctorate, and that his son might be eligible for free tuition at any college that hired him. He acknowledged income from his Air Force pension, and a stipend from a graduate assistantship he had obtained, which, however, restricted his prospects by preventing other employment while he was in school. He testified that he could not afford to pay alimony and child support from current income, and had needed to take $1100 out of his savings each month to cover the payments. But he conceded that he had some $50,000 in liquid assets, $41,000 in demand accounts, and a certificate of deposit in the amount of $8000.
One vocational expert, John Roberts, testified that, while the former husband's skills as a navigator did not readily transfer to a civilian job, his experience as an educator and instructor qualified him for a range of teaching positions. Mr. Roberts testified that the median salary for an elementary school teacher in Kentucky was $40,073 per year, as compared to $40,659 per year for middle school teachers, $41,249 per year for secondary school teachers, and $40,071 per year for postsecondary school teachers. He testified that entry-level positions would pay less, but that, with the former husband's experience, he did not think that the former husband would be in an entry-level position.
Another vocational expert, Gilbert Spruance, testified on behalf of the former wife that, with the former husband's training and experience, he should be able to earn between $60,000 and $70,000 per year. Although this expert considered teaching positions, he also looked at other positions, including some Air Force and Department of Defense positions for civilians that paid between $51,000 and $67,000, notably a faculty position at Air University (with a salary range of $45,000 to $115,000) where the former husband had previously taught. On cross-examination, he conceded that the former husband's qualifications did not necessarily match every qualification asked for on many of the job positions he considered.[3]
Considering child support first, the trial judge found a substantial change in circumstances, occasioned by the former husband's retirement, but concluded that voluntary "retirement" did not justify a reduction in child support. Even if his separation from the Air Force had been involuntary, the trial judge decided, it was not in the child's best interest for the former husband to forgo full employment. The trial judge declined to modify child support, noting there was no guarantee that the former husband would find a higher paying position after obtaining the doctoral degree he sought, so that, in essence, the parties' child would be subsidizing the former husband's education with *217 no assurance of any future benefit. In any event, the trial judge found, the former husband's liquid assets gave him the ability to pay child support while pursuing his studies.
As to alimony, too, the trial court recognized the former husband had a burden to show a material, permanent change, not contemplated at the time of the final dissolution of marriage. See Yangco, 901 So.2d at 219; Dykes, 712 So.2d at 1193. As to alimony, however, the trial court did find "changed circumstances." § 61.14(1)(a), Fla. Stat. (2004). The trial court also concluded that the former husband's retirement was not contemplated in establishing the amount of alimony at the time of dissolution,[4] and that the final judgment of dissolution did not otherwise preclude modification.
While finding that the former wife was contributing to the support of her father and that such expenses were not the former husband's responsibility, the trial court found the former wife was clearly in need of alimony and that cutting off alimony would place her in a desperate financial situation. The trial court also concluded that the former husband's decision to go back to school enhanced his ability to earn income in the future, which would enable the former wife to petition for an increase in alimony in the future. Although the trial court noted "incredible hostility" between the parties, it determined that the former husband did not retire from the Air Force with the intent to deprive the former wife of alimony or pension income, and that the former husband's voluntary retirement from the military after twenty years of service was reasonable. The trial court denied the former wife's request for an increase in alimony, but granted the former husband's request for a reduction in alimony, reducing it to $600 per month beginning July 1, 2004.[5]
Since the former wife does not argue otherwise,[6] we assume for purposes of decision that the evidence establishes a "sufficient, material, permanent, and involuntary" change in circumstances to justify reconsideration of the amount of alimony. Compare Chambliss v. Chambliss, 921 So.2d 822, 824 (Fla. 2d DCA 2006). The existence of changed circumstances requires a new look at the parties' financial situations. When determining afresh the amount of alimony a former spouse *218 should pay, the trial court must consider all relevant economic factors, including "[t]he financial resources of each party, the nonmarital and the marital assets and liabilities distributed to each," and "[a]ll sources of income available to either party." § 61.08(2)(d), (g), Fla. Stat. (2004).
The trial court erred in failing to consider all "financial resources of each party." § 61.08(2)(d), Fla. Stat. (2004). Plainly some $50,000 in cash or cash equivalents comprise a financial resource available to the husband for meeting his alimony obligations. Although the former husband was free to leave the Air Force, moreover, he was not free, while still in his forties, to leave the work force at his former wife's expense.
A trial court can impute income where a spouse has failed to use his or her best efforts to earn income. A claim that a payor spouse has arranged his financial affairs or employment situation so as to shortchange the payee spouse is a valid matter to be explored in determining the payor's real ability to pay. When the obligor spouse voluntarily becomes unemployed or underemployed, the income that he or she is capable of earning may be imputed for purposes of determining an appropriate award of support.
Smith v. Smith, 737 So.2d 641, 644 (Fla. 1st DCA 1999) (citations omitted). See also Tarnawski v. Tarnawski, 851 So.2d 239, 242 (Fla. 4th DCA 2003) (holding that income may be imputed to a spouse obligated to pay alimony because "the court should consider, inter alia, the financial resources of the parties and all sources of income available to each party"). When adjudicating alimony, the trial court should have decided to what extent the former husband's educational pursuits left him "underemployed."[7]Smith, 737 So.2d at 644.
We reverse and remand for reconsideration.[8]
KAHN, C.J. and WOLF, J., concur.
NOTES
[1] He argued that the final judgment of dissolution requiring payments based on his retirement pay and consequent Qualified Order of Military Retirement Pay, which gave a portion of his pension to the former wife, "forced" him to retire, rendering his retirement involuntary. The trial court found, however, to the contrary that the retirement was voluntary.
[2] Because the former wife's counterpetition was filed just before the final hearing, the trial judge considered it only as to issues already raised in the petition concerning the former husband's vocational possibilities. The trial court refused to consider the former wife's contention that her medical expenses had increased, concluding that this issue was raised so late as to prejudice the former husband's ability to respond. These issues can be addressed on remand because the former husband now has more than adequate notice of the former wife's counterpetition.
[3] In her order modifying alimony, the trial judge stated that she did not attribute great weight to Mr. Spruance's testimony because, upon cross-examination, it became clear that the former husband was not eligible for many of the positions Mr. Spruance considered.
[4] The judge explained that, although the parties at the dissolution proceeding discussed the fact that the former husband would retire at twenty years, there was no evidence that his contemplated retirement from the Air Force factored into the amount of alimony.
[5] The trial judge ordered $600 per month in the mistitled Supplemental Final Judgment of Modifying Child Support entered on June 14, 2004. The amount was changed to $700  without notice to the former husband  when an amended supplemental judgment was entered on June 30, 2004, which also changed the amount of life insurance the former husband was required to maintain. We need not reach the issue of whether these changes were correctly accomplished, given today's disposition.
[6] The former wife does argue that the order under review is inconsistent in refusing to reduce child support, while reducing alimony, based on the same change in circumstances. In the context of child support, the Florida Supreme Court has held that, when a spouse decides to return to school instead of working, the question is not whether the decision was voluntary, but whether a temporary reduction in child support was in the best interest of the child. See Overbey v. Overbey, 698 So.2d 811, 814-15 (Fla.1997). The Fifth District has extended this reasoning to alimony cases. See Freilich v. Freilich, 897 So.2d 537, 542 (Fla. 5th DCA 2005) ("[W]e conclude that the best interest standard should also apply to determine whether imputation of income to a spouse seeking educational enhancement is an appropriate basis for an award of alimony.").
[7] Here the evidence did not suggest that teaching college in Kentucky was significantly more remunerative than high school teaching for which the former husband was qualified without additional education.
[8] Alimony alone will be at issue on remand. During the pendency of this appeal, the Florida Supreme Court rendered a decision in Acker v. Acker, 904 So.2d 384 (Fla.2005), which should be helpful in the deliberations on remand.

[T]he portion of a pension which has been equitably distributed to a spouse cannot be considered in determining the other spouse's ability to pay alimony because the other spouse obviously no longer has that portion of the marital asset. Similarly, the needs of a spouse should be based on that spouse's financial situation after, not before, equitable distribution.
Id. at 389. Acker provides guidance in determining the former husband's ability to pay alimony and in determining the former wife's need for support. The trial court should also consider the former wife's current medical expenses. See supra note 2.