971 So.2d 263 (2008)
Robert K. LEONARD, former husband, Appellant,
v.
Kerry D. LEONARD, former wife, Appellee.
No. 1D06-5400.
District Court of Appeal of Florida, First District.
January 7, 2008.
Deborah L. Greene and Tobe C. Karrh, of Smith GreenE & Combs, Jacksonville, for Appellant.
Wesley L. Wallace, Jacksonville, for Appellee.
KAHN, J.
Robert K. Leonard appeals an order granting his petition to modify a consent final judgment of dissolution of marriage. The original judgment required Mr. Leonard to pay appellee, Kerry D. Leonard, $2,500 per month in permanent periodic *265 alimony. The trial court granted modification; Mr. Leonard nevertheless argues the court erred in setting the new alimony amount because the court wrongly imputed income to Mr. Leonard. We agree that no evidence in this case meets the test for imputing income. Accordingly, we reverse and remand for further proceedings.

Background
At the time of the consent final judgment, Mr. Leonard worked as a consultant, with an annual salary of $135,000, having retired from his career employment with the Jacksonville Electric Authority (JEA). Mr. Leonard had worked for the JEA since 1964. Mr. Leonard has a high school diploma but no college degree, although he attended some engineering courses and completed correspondence courses benchmarked by the JEA to satisfy requirements for promotion in his employment.
In April 2004, Mr. Leonard sought to modify the consent final judgment. In his petition, Mr. Leonard alleged he had lost his job and now relied solely on his pension. The petition recited Mr. Leonard's age (61) and his lack of a college degree, concluding his ability to find new employment is "greatly reduced." Mr. Leonard contrasted Mrs. Leonard's situation, stating she had rehabilitated herself by finding full-time employment and continues to receive 25% of Mr. Leonard's pension, or $1,153.04 per month. Mr. Leonard requested that the court, among other things, "substantially reduce or eliminate the alimony in this case."
A hearing took place during which both parties testified. Mr. Leonard introduced into evidence a vocational evaluation. The vocational evaluator conducted labor market survey activities and found only three jobs with "[p]otentially feasible openings." Only one of those jobs was near Mr. Leonard's home in Jacksonville; the others were in Gainesville and Raleigh, North Carolina. Mr. Leonard had inquired after the Jacksonville position and found he could not qualify.
In the order on appeal, the court found "there has been a substantial, material and involuntary change in circumstances since entry of the Final Judgment to warrant a reduction in the [Wife's] permanent alimony." The court also made the following findings concerning the parties' employment and income:
Since losing his job in 2004 [due to funding cutbacks, the Husband] has not sought employment outside of his field as a power distribution engineer. The Court received into evidence a vocational evaluation report dated December 20, 2004 which details the [Husband's] work history, education and job qualifications. The report indicates he has no limitation that would effect [sic] his ability to obtain and maintain full-time competitive employment in his field. The Court finds that would be true for any field for which he has transferrable skills. His earning potential for his field is from $4,435.00 [sic[*]] to $103,337.00 and the Court finds that the earnings potential for fields for which he has transferrable skill would be at least $40,000.00. However, the [Husband] now 61 years of age has made no effort to obtain employment outside his field.
The [Wife], age 57, was not employed on the date of the Final Judgment; however, she became employed as a secretary with Mayo Clinic in 2004 and earned $27,629.00 gross and presently *266 earns $2,572.00 per month gross. The [Wife] will be social security eligible at age 67.
. . . .
Based on the above the [Husband] presently receives $3,459.00 per month from his pension (after deduction [of] $1,153.00 per month lump sum alimony) and has a wage earning capacity of $2,917.00 per month gross at an income of $35,000.00 per year for a total of $6,375.00 per month. The [Wife] presently has income of $1,153.00 per month gross as lump sum alimony and $2,572.00 per month gross from her job for a total of $3,725.00 per month gross. The difference between the two monthly incomes is $2,652.00, and the Court finds that the [Husband] should have his permanent alimony obligation reduced to $1,325.00 per month which gives each party an approximate income of $5,050.00 per month gross.
The decretal portion of the order granted Mr. Leonard's modification petition and reduced the monthly alimony obligation to $1,325, retroactive to April 20, 2004.

Analysis
"The abuse of discretion standard of review applies to trial court orders in modification of alimony and child support cases." Woolf v. Woolf, 901 So.2d 905, 911 (Fla. 4th DCA 2005); see Buttermore v. Meyer, 559 So.2d 357, 359 (Fla. 1st DCA 1990). "In considering the imputation of income, our standard of review is whether the trial court's determination is supported by competent, substantial evidence." Gruber v. Gruber, 857 So.2d 329, 331 (Fla. 2d DCA 2003); accord Brown v. Cannady-Brown, 954 So.2d 1206, 1207 (Fla. 4th DCA 2007); Schram v. Schram, 932 So.2d 245, 249 (Fla. 4th DCA 2005). See also, e.g., Woolf, 901 So.2d at 911-12; Freilich v. Freilich, 897 So.2d 537, 542-43 (Fla. 5th DCA 2005).
"A court may impute income if a party is earning less than he could, based on a showing that he has the capability of earning more by the use of his best efforts." Ritter v. Ritter, 690 So.2d 1372, 1374 (Fla. 2d DCA 1997); accord Gruber, 857 So.2d at 331. This court has indicated when a trial court may impute income to a spouse:
A trial court can impute income where a spouse has failed to use his or her best efforts to earn income. A claim that a payor spouse has arranged his financial affairs or employment situation so as to shortchange the payee spouse is a valid matter to be explored in determining the payor's real ability to pay. When the obligor spouse voluntarily becomes unemployed or underemployed, the income that he or she is capable of earning may be imputed for purposes of determining an appropriate award of support.
Smith v. Smith, 737 So.2d 641, 644 (Fla. 1st DCA 1999) (citations omitted); accord Vriesenga v. Vriesenga, 931 So.2d 213, 218 (Fla. 1st DCA 2006).
In this case, the trial court found the Husband "has a wage earning capacity of $2,917.00 per month gross at an income of $35,000.00 per year. . . ." The court did not identify the source of this income; moreover, nothing in the record supports this finding. Accordingly, the court erred in imputing this income to Mr. Leonard. See, e.g., Schram, 932 So.2d at 249-50 ("In order to impute income to the husband, specific findings are required that indicate source and amount. . . . [T]he trial court may only impute a level of income supported by the evidence of employment potential and probable earnings based on history, qualifications, and prevailing wages."); Wendroff v. Wendroff, 614 So.2d 590, 595 (Fla. 1st DCA 1993) ("It is error *267 for a trial court to impute income to a supporting spouse without setting forth the amounts imputed and the sources of this income.").
Further, the court erred in imputing any income to Mr. Leonard, given the lack of findings in the order and lack of record support for such findings had they been made. According to case law, "restraints on imputation exist in the form of a required two-step analysis." Schram, 932 So.2d at 250; accord Brown, 954 So.2d at 1207.
First, the trial court must conclude that the termination of income was voluntary; second, the court must determine whether any subsequent underemployment "resulted from the spouse's pursuit of his own interests or through less than diligent and bona fide efforts to find employment paying income at a level equal to or better than that formerly received."
Schram, 932 So.2d at 249-50 (quoting Konsoulas v. Konsoulas, 904 So.2d 440, 444 (Fla. 4th DCA 2005) (quoting Ensley v. Ensley, 578 So.2d 497, 498 (Fla. 5th DCA 1991))); accord Brown, 954 So.2d at 1208. The record before us offers no support for either prong of the pertinent analysis.
Beyond the dearth of record support, we question why the trial court did not consider Mr. Leonard's age (he is now 64), education level (high school diploma, plus a few college courses), his past employment history with only one employer (JEA) during his career, his only employer's policy not to rehire retired employees, and his lifelong residency in Jacksonville. Cf. Smith, 737 So.2d at 645 ("So long as the individual's recent work history and occupational qualifications, and the prevailing earnings level in the pertinent community, are properly taken into account, as they were in the case at bar, a trial court has discretion to impute income in the amount the person was earning before voluntarily reducing his or her income."). Given Mr. Leonard's retirement from JEA and his age, the court should have considered whether, and to what extent, he should be required to re-enter the labor market. See Pimm v. Pimm, 601 So.2d 534, 537 (Fla.1992) ("In determining whether a voluntary retirement is reasonable, the court must consider the payor's age, health, and motivation for retirement, as well as the type of work the payor performs and the age at which others engaged in that line of work normally retire. The age of sixty-five years has become the traditional and presumptive age of retirement for American workers. . . . Based upon this widespread acceptance of sixty-five as the normal retirement age, we find that one would have a significant burden to show that a voluntary retirement before the age of sixty-five is reasonable. Even at the age of sixty-five or later, a payor spouse should not be permitted to unilaterally choose voluntary retirement if this choice places the receiving spouse in peril of poverty."); accord Zeballos v. Zeballos, 951 So.2d 972, 973-74 (Fla. 4th DCA 2007) (finding that order reducing, rather than terminating, husband's alimony obligation was abuse of discretion where husband at age 65 wanted to retire and wife's expenses were all paid by her fiancé).
On remand, the court should consider these matters, as well as the parties' incomes, Mrs. Leonard's need for alimony, and Mr. Leonard's ability to pay such alimony. See Vriesenga, 931 So.2d at 217-18 ("The existence of changed circumstances requires a new look at the parties' financial situations" and "[w]hen determining afresh the amount of alimony a former spouse should pay, the trial court must consider all relevant economic factors, including `[t]he financial resources of each party, the nonmarital and marital assets and liabilities *268 distributed to each,' and `[a]ll sources of income available to either party.'" (quoting § 61.08(2)(d), (g), Fla. Stat.)); see also Acker v. Acker, 904 So.2d 384 (Fla. 2005) (holding that trial court may consider pension benefits equitably distributed to a party in determining proper amount of alimony); Pimm, 601 So.2d at 537 (indicating, in the context of a retiring payor spouse, "the court should consider the needs of the receiving spouse and the impact a termination or reduction of alimony would have on him or her" and "[i]n assessing those needs, the court should consider any assets which the receiving spouse has accumulated or received since the final judgment as well as any income generated by those assets").
REVERSED and REMANDED.
BROWNING, C.J. and ROBERTS, JJ., concur.
NOTES
[*] A review of the Vocational Evaluation Report indicates the court likely intended this number to be $40,435.