MARSTILLER, J.
 

 Brian McQuaig (“Former Husband”) and Ann McQuaig (“Former Wife”) entered into a Consent Final Judgment of Dissolution of Marriage in October 2006. The final judgment incorporated the parties’ agreement that the Former Husband would pay $1,350 per month in child support and $8,000 per month in permanent alimony. When the parties divorced in 2006, the Former Husband’s income as a surgical products sales representative was approximately $363,000. In 2007, he became a distributor for a competing company and earned approximately $400,000, due in large part to an agreed-upon guaranteed monthly income during a 12-month non-compete period. In 2008, the Former Husband experienced a decrease in income in the wake of certain economic and industry changes.
 

 Consequently, in September 2008, the Former Husband filed a Supplemental Petition to Modify Final Judgment seeking a reduction in his monthly alimony obligation. In April 2009, the trial court entered an order granting a temporary reduction in alimony to $5,000 per month from September 2008 to September 2010. The court further ordered the Former Husband to pay $8,500 toward the $17,200 attorney’s fee the Former Wife incurred for the modification proceedings. The Former Husband appeals the modification order, arguing the trial court erred by (1) setting an excessive alimony amount, (2) failing to deduct business expenses when computing his income, and (3) awarding partial attorney’s fees to the Former Wife when her income is now substantially greater than his. We affirm the trial court’s order because we find no abuse of discretion in the modified alimony amount or the fee award.
 

 We start with the court’s finding as to the Former Husband’s income because from that asserted error his other issues appear to flow. In its order, the court stated:
 

 [T]he Former Husband’s gross commissions during the year 2008 were approximately $120,000.00. The Former Husband deducted from the aforementioned gross amount various business expenses, thereby reducing his taxable net income. The Court finds that these “business expenses” were no different than expenses previously incurred that were not deductible in total because of his previous status as an employee, as opposed to a sole proprietor.
 

 (Emphasis in original). The evidence before the court showed that as a distributor, the Former Husband still sells surgical equipment and earns commissions as he
 
 *803
 
 did when he was employed as a salesperson. However, the commission rate is higher, and the money making potential is greater. In 2008, the Former Husband earned $119,949 from his distributorship, McQuaig Surgical, LLC. On his 2008 tax return, he deducted $30,028 in business expenses for an unadjusted gross taxable income of $89,921. The deducted expenses included: car and truck expenses; office expense; repairs and maintenance; travel; deductible meals and entertainment; and “other expenses” (telephone; internet/phone/fax; software; passport; clothing; freight; “Spine Journal;” “Vendor Mate;” entertainment; parking).
 

 Citing section 61.30, Florida Statutes, and cases interpreting that statute, the Former Husband argues the trial court was required to deduct his “ordinary and necessary” business expenses in calculating his gross income. The statute he relies on governs
 
 child support determinations
 
 and provides that in determining a parent’s monthly income for
 
 that
 
 purpose, gross income includes “business income,” which in turn “means gross receipts minus ordinary and necessary expenses required to produce income.” § 61.30(2)(a)3., Fla. Stat. (2008). We are not persuaded section 61.30 should be applied in this case where the relevant statute is section 61.08 governing alimony awards, and that statute speaks only in terms of “financial resources” and “all sources of income.”
 
 See
 
 § 61.08(2)(d), (g), Fla. Stat. (2008). But even assuming the definition of “business income” in section 61.30 is properly applied here, the trial court did not act unreasonably in declining to accept the Former Husband’s representations. Except for a $500 monthly car allowance the Former Husband received as a sales representative, there is no evidence in the record showing he incurs expenses in selling surgical equipment as a distributor that differ from those he incurred as a salesman or that previously were paid or reimbursed by his former employer. That the Former Husband can now deduct those expenses for tax purposes does not make them
 
 ipso facto
 
 “ordinary and necessary” for Chapter 61 income calculation purposes, and he has presented no authority — nor have we found any — to support such a proposition. Absent such authority or any competent, substantial evidence of what expenses are “ordinary and necessary” to running the Former Husband’s distributorship, the trial court did not abuse its discretion in finding that his 2008 gross income was $120,000.
 
 See Burkhart v. Burkhart,
 
 731 So.2d 733, 734 (Fla. 1st DCA 1999).
 

 The Former Husband also contends that the modified alimony payment is excessive because it leaves the Former Wife with 80% of the parties’ combined income, and further that the attorney’s fee award is unwarranted because the Former Wife is now in the superior financial position. The trial court temporarily reduced the $8,000 monthly alimony agreed upon by the parties in the Consent Final Judgment to $5,000 for 16 months beginning May 1, 2009, and retained jurisdiction to revisit the need for modification at the end of the 16-month period. The alimony modification is retroactive to September 2008, when the Former Husband began paying only a portion of his alimony and child support obligation every month. By the time the court entered the modification order, the Former Husband was in arrears $46,537.50; the retroactive modification reduced the arrearage to $24,037.50. As to attorney’s fees, the court found “[t]he Former Husband is in a superior financial condition to contribute to the Former Wife’s attorneys fees and has available resources to satisfy his obligation.” It thus ordered the Former Husband to pay $8,500 toward the Former Wife’s attorney’s fees of $17,200.
 

 
 *804
 
 Generally, an order modifying alimony is reviewed for abuse of discretion;
 
 see Leonard v. Leonard,
 
 971 So.2d 263, 266 (Fla. 1st DCA 2008), and appellate courts will only disturb such an order when the alimony amount exceeds or virtually exhausts the paying spouse’s income,
 
 see Hotaling v. Hotaling,
 
 962 So.2d 1048, 1051 (Fla. 2d DCA 2007) and cases cited therein. Further, a trial court has the discretion to award attorney’s fees in modification proceedings after considering the parties’ financial resources. § 61.16(1), Fla. Stat. (2008). But “[wjhere there is a substantial disparity between the parties’ incomes, it may be an abuse of discretion to grant a partial attorneys’ fee award.”
 
 Mount v. Mount,
 
 989 So.2d 1208, 1210 (Fla. 2d DCA 2008) (quoting
 
 Lowman v. Lowman,
 
 724 So.2d 648, 650 (Fla. 2d DCA 1999)).
 

 The evidence considered by the court included the Former Husband’s February 2009 amended financial affidavit showing $10,027 gross monthly income and the Former Wife’s April 16, 2009, amended financial affidavit reflecting $2,000 gross monthly income. When the parties divorced in 2006, agreeing to $8,000 monthly alimony, the Former Wife essentially was not working; she earned approximately $120 per month as a sales associate in a clothing store. She testified that after the Former Husband started making partial alimony payments, she increased her working hours, cut back on her expenses and nonessential expenditures, and borrowed money from her parents. She has a Vanguard IRA worth approximately $88,000 from which she made no withdrawals.
 

 The Former Husband, on the other hand, maintains $10,547 in monthly business and personal expenses, excluding alimony and child support. He testified that prior to September 2008 he met all his financial obligations, including $9,350 in monthly alimony and child support, by using his 2007 tax refund, withdrawing roughly $20,000 from his UBS stock account, delaying payment of his 2008 self-employment taxes, and “living off credit cards.” After reducing his payments to the Former Wife, the Former Husband continued to pay his bills, debts, and expenses (including a sizeable monthly tab at a local sports bar), remaining current on all of them even at the time of the final hearing in April 2009. Between October 2008 and January 2009, he withdrew another $25,000 from his UBS stock account and on the eve of the hearing he depleted the $9,000 balance in the account. The Former Husband testified he used the $25,000 to “help pay expenses.” But the $9,000 was not earmarked for any particular expense(s) or debt(s). Rather, he withdrew the money because “I need it” and because he did not want to be “penalized.” As of the date of the final hearing, the Former Husband had not invaded his $91,000 UBS rollover retirement account, his $11,000 Wachovia IRA, or his $30,000 UPS savings plan account. Also untouched was approximately $18,000 in stock from his former employer and $30,000 in stock options from the company with which he is currently affiliated.
 

 Based upon this evidence, we see no abuse of discretion by the trial court in setting the temporarily modified alimony payment at $5,000. This amount neither exceeds nor virtually depletes the Former Husband’s income. And the evidence demonstrates he is able, even with reduced income, to maintain the lifestyle he had prior to 2008. Furthermore, the trial court will reassess the Former Husband’s financial situation and the need for continued modification when the 16-month period expires. We also find sufficient eviden-tiary support for the trial court’s finding that the Former Husband is in a superior financial condition compared to the For
 
 *805
 
 mer Wife. Thus the court did not abuse its discretion in granting the Former Wife a partial attorney’s fee award.
 

 AFFIRMED.
 

 DAVIS and BENTON, JJ., concur.