737 So.2d 641 (1999)
Thomas Joseph SMITH, Appellant,
v.
Julie Ann SMITH, Appellee.
No. 98-3798.
District Court of Appeal of Florida, First District.
August 3, 1999.
*642 Louis K. Rosenbloum of Louis K. Rosenbloum, P.A.; and David H. Levin of Levin, Middlebrooks, Thomas, Mitchell, Greene, Echsner, Proctor, & Papantonio, P.A., Pensacola, for Appellant.
E. Jane Brehany, Pensacola, for Appellee.
BROWNING, J.
Thomas J. Smith, the former husband, appeals a final judgment dissolving his nearly 18-year marriage to Julie A. Smith. The former husband contends that the trial court erred by imputing income to him "to the extent of his financial ability as it existed at the time of final hearing." Because the awards for child support ($2,088 monthly), permanent alimony ($712 monthly), and attorney's fees and costs ($31,214.62) all were based partly on the level of income imputed to the former husband, he seeks reversal of the provisions in the final judgment addressing these awards, and remand of the case for further proceedings. Finding no abuse of discretion in the lower tribunal's imputation of income, we affirm.
In a dissolution of marriage proceeding, each party's sources of income and ability to pay are factors to be considered in determining whether alimony, child support, or attorney's fees are appropriate, and if so, in what amounts. In the final judgment, the trial court found that "[t]he only sources of income available to either party are their respective salaries, passive *643 income generated from liquid assets and, eventually, retirement income."
The statute addressing child support guidelines mandates the imputation of income under certain enumerated circumstances:
Income on a monthly basis shall be imputed to an unemployed or underemployed parent when such unemployment or underemployment is found to be voluntary on that parent's part, absent physical or mental incapacity or other circumstances over which the parent has no control. In the event of such voluntary unemployment or underemployment, the employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community; however, the court may refuse to impute income to a primary residential parent if the court finds it necessary for a parent to stay home with the child.
§ 61.30(2)(b), Fla. Stat. (1997); Thilem v. Thilem, 662 So.2d 1314, 1316-17 (Fla. 3d DCA 1995). The statute governing the various options relating to alimony requires the trial court to include findings of fact relative to "all relevant economic factors," including "[a]ll sources of income available to either party" and "any other factor necessary to do equity and justice between the parties." § 61.08, Fla. Stat. (1997); Huntley v. Huntley, 578 So.2d 890 (Fla. 1st DCA 1991); Platt v. Platt, 103 So.2d 253, 255 (Fla. 1st DCA 1958) (payor spouse's earning capacity, and not just income alone, should be considered along with payee spouse's needs, in determining ability to pay alimony). In determining actual income for purposes of awarding alimony, the trial court must set forth factual findings regarding a spouse's probable and potential level of earnings, the source of actual and imputed income, and any adjustments to income. Jones v. Jones, 636 So.2d 867, 868 (Fla. 4th DCA 1994). While the basis for imputing income and the ability to pay obligations may be inferred from the circumstances of the case, Scapin v. Scapin, 547 So.2d 1012, 1013 (Fla. 1st DCA 1989), the source of income and the amount imputed must be supported by the evidence. Alon v. Alon, 665 So.2d 1110 (Fla. 4th DCA 1996). The statute addressing attorney's fees, suit money, and costs contemplates the trial court's consideration of "the financial resources of both parties," including the parties' relative financial need or ability to pay. § 61.16(1), Fla. Stat. (1997); Satter v. Satter, 709 So.2d 617 (Fla. 4th DCA 1998) (on mot. for reh'g); Kartzmark v. Kartzmark, 709 So.2d 583 (Fla. 4th DCA 1998). In deciding whether an award of attorney's fees is justified, a trial court may impute income to a voluntarily unemployed or voluntarily underemployed party. Arouza v. Arouza, 670 So.2d 69 (Fla. 3d DCA 1995). Taken together, these statutes support the former husband's point that the imputation of income to him affected the trial court's decisions regarding child support, alimony, and attorney's fees and costs. The issue is whether the record provides a basis for imputing income.
"It is error for a trial court to impute income to a supporting spouse without setting forth the amounts imputed and the sources of this income." Wendroff v. Wendroff, 614 So.2d 590, 595 (Fla. 1st DCA 1993); Cortez-Williams v. Douglass, 659 So.2d 1250 (Fla. 1st DCA 1995); Wood v. Wood, 632 So.2d 720 (Fla. 1st DCA 1994). During the marriage, the former husband was well-employed and, in 1987, he became a "master of the vessel" (captain) in the Merchant Marine, which provided him with an average gross monthly income of $9,025.00. His federal income tax returns reflected his gross earnings of approximately $106,000 (1994); $120,000 (1995); $107,000 (1996); and $109,000 (1997). He was receiving a pay raise in 1998. The final judgment expressly states that the former husband's net monthly income was $6,702.00, or 77.96 per cent of the parties' combined net monthly income *644 of $8,596.00, at the time of the final hearing. To support this finding, we need look no farther than the former husband's testimony (at the first of two final hearings) acknowledging that his financial affidavit correctly reflected a net monthly income of about $6,900.00, after deductions. Alternatively, the former husband testified that he had taken three examinations for postal employment and enjoyed a 10-point veteran's disability preference. He stated that a postal job would pay around $29,000 or $30,000 a year. Upon retirement from the maritime industry, he would be entitled to receive pre-tax monthly pay of $2,400 to $2,600. The former wife, who was employed as a school teacher with the Santa Rosa County School Board, earned substantially less than her husband.
A trial court can impute income where a spouse has failed to use his or her best efforts to earn income. Edwards v. Sanders, 622 So.2d 587 (Fla. 1st DCA 1993). A claim that a payor spouse has arranged his financial affairs or employment situation so as to shortchange the payee spouse is a valid matter to be explored in determining the payor's real ability to pay. Gallant v. Gallant, 468 So.2d 479 (Fla. 2d DCA 1985). When the obligor spouse voluntarily becomes unemployed or underemployed, the income that he or she is capable of earning may be imputed for purposes of determining an appropriate award of support. Kovar v. Kovar, 648 So.2d 177 (Fla. 4th DCA 1994); Work v. Provine, 632 So.2d 1119 (Fla. 1st DCA 1994); Maddux v. Maddux, 495 So.2d 863 (Fla. 4th DCA 1986).
For instance, the husband in Maddux originally had earned up to $38,000 annually as a registered landscape architect. In the last two years, he voluntarily lowered his weekly salary from $500 to $200 because of "business difficulties." He said he could earn $12,000 to $18,000 a year if he returned to work for a small developer or a large landscape architecture firm. He anticipated a weekly salary of $250 to $350, and perhaps more, but thought he would have a better chance if self-employed. The trial court found that Mr. Maddux had the expertise and skill to reestablish himself as a landscape architect able to support his child and to pay two years' rehabilitative alimony. Affirming the award of child support and alimony in an amount constituting 108 per cent of Mr. Maddux's claimed present income, the Fourth District Court stated:
Where a former husband has an ability to earn if he so desires, the trial judge may impute an income to the husband according to what he could earn by the use of his best efforts to gain employment equal to his capabilities, and on that basis enter an award of alimony as if the husband were in fact earning the income so imputed.
495 So.2d at 864; Desilets v. Desilets, 377 So.2d 761 (Fla. 2d DCA 1979).
The result in Maddux is very similar to the instant ruling. At the dissolution hearings, the former wife claimed that her husband's decision to leave the ship or to retire during the course of the dissolution proceedings was motivated primarily by his wish to reduce his financial obligations to her and to their children. At the first of two final hearings, the former husband testified that he had been on a rotation schedule of four months' work followed by two months' vacation. He indicated that this work schedule would not be in effect anymore because he was eligible for retirement, that he had mutually agreed with the former wife to retire so that he could return home as "Mr. Mom" to assist in the care of the parties' children, and that he had already turned in his retirement papers. He acknowledged that he could return to his employment despite his announced decision to retire. He stated that he would go back to work if necessary to satisfy any court order to pay support and to avoid being held in contempt.
At the second final hearing, the former husband testified that he was retired and had come home to take care of the children. He indicated that his maritime employer *645 had informed him on the previous day that it had placed another captain in his permanent position aboard ship, so that his previous job was no longer available to him. The former husband, who is in his late 40's, acknowledged that a captain in the Merchant Marine probably can work at least until age 65 or 70. Although the former husband opined that he could not undo his retirement plans and did not intend to do so, the record indicates that he was entitled to revoke his retirement application anytime before receiving his first retirement check. He testified that he had "done his time" working 20 years in the maritime industry away from home and, in accordance with a prior agreement made with the former wife, he would not leave his children. The former husband felt that in light of the former wife's alleged poor homemaking skills and irresponsible financial management of family resources during his extended work-related absences, he had been "forced" to retire "as a matter of moral obligation to [their] children" so that the children could be reared "correctly."
"[A]bsent physical or mental incapacity or other circumstances over which the parent has no control," unemployment or underemployment is voluntary. § 61.30(2)(b); Thilem, 662 So.2d at 1316; Polley v. Polley, 588 So.2d 638 (Fla. 3d DCA 1991). Relying on testimony taken pursuant to the former wife's motion for contempt and other related motions filed by the parties, the trial court found that the former husband was, at least temporarily, unable to obtain employment due to his hospitalization for psychological problems related to his period of combat in Vietnam.[1] However, the court noted that "the only credible evidence as to the extent of any medical/psychological disability which he may have comes from his own testimony." Although this evidence of some disability was sufficient to overcome the motion for contempt, it was properly deemed insufficient to avoid imputation of income.
Irrespective of whether the former wife did or did not originally agree to the former husband's plan to retire when he left the maritime industry, his unemployment at the time of the final hearing clearly was "voluntary" for purposes of imputing income. Either the parties mutually agreed that he would leave his prior position, or the former husband unilaterally and volitionally terminated his job aboard a particular ship in order to come home to his family or to reduce his financial obligations. So long as the individual's recent work history and occupational qualifications, and the prevailing earnings level in the pertinent community, are properly taken into account, as they were in the case at bar, a trial court has discretion to impute income in the amount the person was earning before voluntarily reducing his or her income. Stelk v. Stelk, 699 So.2d 811 (Fla. 1st DCA 1997); Kovar, 648 So.2d at 178-79; Stodtko v. Stodtko, 636 So.2d 814 (Fla. 3d DCA 1994); Work, 632 So.2d at 1119. Cf. Robinson v. Robinson, 713 So.2d 437, 438-39 (Fla. 2d DCA 1998) (where trial court imputed income based solely on former husband's prior salary, without considering his occupational qualifications or the prevailing earnings level in the community for a plumber with his qualifications, dissolution judgment was reversed and remanded for further findings).
In reviewing such discretionary matters, we shall not disturb any ruling that is supported by the evidence and satisfies the general test of reasonableness. Canakaris v. Canakaris, 382 So.2d 1197 (Fla.1980); Kovar, 648 So.2d at 178. At the time of the final hearing, the former husband had a clearly established history of successive annual incomes exceeding $100,000 in the maritime industry. He does not suggest, nor does the record indicate, that his prior salary or his previous employment as a captain on a particular ship was unique or unusual. The *646 record does not suggest that a comparable position is unavailable in the maritime industry. Therefore, we conclude that the former husband's previous income as a master of the vessel constitutes relevant evidence of his probable earning capacity in a similar position in the vast maritime industry. Gallant, 468 So.2d at 480. Given this evidence of his recent past income and his proven work qualifications in the record, the former husband has not shown any valid basis for rejecting the trial court's finding a probable earnings level of $6,702 for purposes of imputing his net monthly income. Stodtko, 636 So.2d at 815. Furthermore, the trial court found that the former husband owns additional assets such as a money purchase plan and I.R.A.'s from which court-ordered support can be paid. Dyer v. Dyer, 658 So.2d 148 (Fla. 4th DCA 1995). As to his continuing employability, the former husband testified that he could contact his union about available jobs and very likely could find suitable employment in the maritime industry. He stated that he would continue working on a ship as long as he remained obligated to make payments pursuant to court order. Even assuming that the former husband elects not to return to maritime work, we note that postal employment would pay approximately $30,000 annually, and his pre-tax monthly retirement income could be as high as $2,600. Accordingly, we conclude that the findings in the final judgment are supported by the parties' testimony and financial records, and that the trial court properly relied on evidence in the record indicating the amount and source of potential salaried income for the former husband.
AFFIRMED.
ERVIN and VAN NORTWICK, JJ., CONCUR.
NOTES
[1] The hospitalization occurred several months after the final hearing.