REVISED OPINION ON APPELLEE’S MOTION FOR REHEARING
 

 BROWNING, J.
 

 We substitute this slightly revised opinion for our opinion in
 
 Rabbath v. Farid,
 
 34 Fla. L. Weekly D201 (Fla. 1st DCA Jan. 21, 2009). Claude Rabbath (Appellant), the former husband, appeals several findings of fact and conclusions of law made by the circuit court in a final judgment dissolving Appellant’s 22-year marriage to Hala M. Farid (Appellee), the former wife. Appellant contends that the trial court abused its discretion in 1) finding that
 
 *780
 
 Appellant concealed
 
 income
 
 and assets and dissipated marital assets; 2) ordering Appellant to pay Appellee $2,000.00 monthly for permanent, periodic alimony; 3) ordering Appellant to pay Appellee’s attorney’s fees; and 4) imputing income to Appellant and ordering him to pay $1,030.00 monthly for child support. We affirm that portion of the final judgment dissolving the parties’ marriage. However, because no competent, substantial evidence supports the imputation of income to Appellant at the substantial level found by the court, we are constrained to reverse the awards of alimony, child support, and attorney’s fees and to remand for an evidentiary hearing to determine the proper amount of income to impute to Appellant based on his current employment prospects, “recent work history, occupational qualifications, and prevailing earnings level in the community.” § 61.30(2)(b), Fla. Stat. (2005);
 
 see Swain v. Swain,
 
 932 So.2d 1214, 1215 (Fla. 1st DCA 2006);
 
 Poter v. Porter,
 
 873 So.2d 538, 541 (Fla. 1st DCA 2004);
 
 Smith v. Smith,
 
 737 So.2d 641, 645 (Fla. 1st DCA 1999).
 

 I. Concealment of Income and Assets and Dissipation of Marital Assets
 

 “A claim that a payor spouse has arranged his financial affairs or employment situation so as to shortchange the payee spouse is a valid matter to be explored in determining the payor’s real ability to pay.”
 
 Id.
 
 at 644. In her petition to dissolve the parties’ marriage, Appellee alleged that Appellant had concealed income and had dissipated marital income and assets totaling approximately $150,000.00 while engaged in an ongoing extra-marital affair. Relying on the expert testimony of Barbara Pople and Appellee’s testimony, the trial court determined that Appellant had concealed income and assets relating to his overseas bank and credit card accounts and, since at least 2003, had dissipated marital assets in an amount totaling at least $383,551.83 while engaging in an extra-marital relationship with a woman who lived in Belarus. The trial court specifically took into account the following evidence in the record: sexually explicit emails and photos exchanged between Appellant and a woman in Belarus named Nina, whom Appellant described as his “translator”; e-mails between Appellant and a travel agent in Belarus; and Appellant’s financial records, which detailed extensive travel and gift expenses for him and his mistress.
 

 In domestic relations cases, “dissipation” occurs “where one spouse uses marital funds for his or her own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown.”
 
 Murray v. Murray,
 
 636 So.2d 536, 538-39 (Fla. 1st DCA 1994) (quoting
 
 Gentile v. Gentile,
 
 565 So.2d 820, 823 (Fla. 4th DCA 1990),
 
 disapproved on other grounds, Acker v. Acker,
 
 904 So.2d 384, 389 (Fla.2005));
 
 Hellwig v. Hellwig,
 
 100 Ill.App.3d 452, 55 Ill.Dee. 762, 426 N.E.2d 1087, 1094 (1981). Adultery can be considered in fashioning an unequal distribution of assets and liabilities to the extent the marital misconduct depleted marital resources.
 
 See Childers v. Childers,
 
 640 So.2d 108, 109 (Fla. 4th DCA 1994). Evidence of a spouse’s dissipation of assets is a proper consideration for the trial court in devising an equitable distribution.
 
 See Escudero v. Escudero,
 
 739 So.2d 688, 692-93 (Fla. 5th DCA 1999);
 
 Romano v. Romano,
 
 632 So.2d 207, 210 (Fla. 4th DCA 1994).
 

 Ms. Pople, who is certified as a public accountant, financial planner, and divorce financial analyst, testified she had analyzed the financial disclosures supplied by the parties. She acknowledged having received very limited information regarding
 
 *781
 
 the parties’ financial records and activities, from which she drew logical conclusions using whatever data were produced. Appellant testified that after his 25-year employment contract with Michelin in the Middle East ended, the company made it very difficult for him to obtain certain personal financial records. Additionally, he testified that he did not have access to other financial records that remained in the marital residence in Tallahassee, Florida, after Appellee served the petition to dissolve the marriage and Appellant moved to his sister’s residence. Whether or not Appellant acted in good faith and presented the most complete financial records reasonably available to him was a matter of credibility for the trial court to resolve.
 
 See Shaw v. Shaw,
 
 334 So.2d 13, 16 (Fla.1976). We believe the record supports the reasonable conclusion that Ms. Pople analyzed the parties’ financial activities and records as well as could be expected, given the obvious gaps in the information provided to her.
 

 Even allowing for the fact, asserted by Appellant, that personal checks and business checks are rarely used for payment, and cash is the preferred method of payment in the Middle Eastern economies where he worked for Michelin, we cannot ignore the record evidence that Appellant’s responses to relevant questions regarding his income and expenses were evasive or incomplete. Ms. Pople identified $383,551.83 in transactions during a two-year period of the marriage, which she concluded were very likely instances of asset dissipation. She explained the criteria she used in selecting the various financial transactions, and she included references from Appellant’s financial records to support each item contained in her report. The record supports the trial court’s conclusion that Appellant’s testimony left the vast majority of Ms. Pople’s report of suspected asset dissipation unchallenged. The court accepted competent, substantial evidence indicating that Appellant made unnecessary trips to Belarus, that he and his mistress traveled using marital assets, and that he lavished gifts upon her. Accordingly, we find no abuse of discretion in the trial court’s findings that Appellant dissipated $383,551.83 while engaged in the extra-marital affair and that his misconduct should be factored into the equitable distribution of the parties’ assets and liabilities.
 
 See Romano,
 
 632 So.2d at 210.
 

 Likewise, competent, substantial evidence in the record — the testimony of Ms. Pople and Appellee and the financial records — supports the trial court’s conclusion that Appellant tried to conceal income and assets. During the litigation of this case, Appellant failed to disclose a great deal of financial information relevant to his overseas bank and credit card accounts. The record supports the trial court’s determination that Appellant’s testimony failed adequately to explain what happened to substantial marital assets (under his control) while he remained working in the Middle East before relocating to Tallahassee, where his family preceded him. Appellant’s failure to account for these missing funds justifies an unequal distribution of assets and liabilities in Appellee’s favor. Because competent, substantial evidence supports the trial court’s findings of fact concerning equitable distribution, Appellant has not shown an abuse of discretion.
 
 See Craig v. Craig,
 
 982 So.2d 724, 727 (Fla. 1st DCA 2008).
 

 II. Imputation of Income
 

 Appellant contends that the trial court abused its discretion by imputing income to him in an amount unsupported by the record. In
 
 Sivain,
 
 we stated:
 

 For the purpose of determining child suppoi’t and alimony, the trial court may
 
 *782
 
 impute income to the former spouse upon a finding that he or she is voluntarily unemployed or underemployed due to the pursuit of his or her own interests, or a less than diligent effort to find employment paying at a level equal to that formerly enjoyed.
 

 982 So.2d at 1215. We conclude that the trial court abused its discretion by imputing a $8,123.00 net monthly income to Appellant without an evidentiary basis to make findings to support this amount, which is substantially higher than Appellant’s current earnings as a car salesman in Tallahassee.
 

 Before the trial court could impute income to Appellant, it had to make particularized findings relating to the current job market, Appellant’s more recent work history, his occupational qualifications, and the prevailing earnings level in the local community where he and his family live.
 
 See id.; Porter,
 
 878 So.2d at 541 (concluding that trial court erred as a matter of law by imputing current income-earning capacity to the former wife in the 2003 final judgment of dissolution in Florida based on her 1992 salary earned in California, without conducting a proper inquiry and making appropriate findings regarding her current employment prospects);
 
 Wendel v. Wendel,
 
 805 So.2d 913, 914 (Fla. 2d DCA 2001);
 
 Smith,
 
 737 So.2d at 645;
 
 Cushman v. Cushman,
 
 585 So.2d 485, 486 (Fla. 2d DCA 1991). “In considering the imputation of income, the trial court’s findings must be supported by competent substantial evidence.”
 
 Vazquez v. Vazquez,
 
 922 So.2d 368, 370 (Fla. 4th DCA 2006);
 
 Swain,
 
 932 So.2d at 1215. In
 
 Smith,
 
 737 So.2d at 642, we stated:
 

 In a dissolution of marriage proceeding, each party’s sources of income and ability to pay are factors to be considered in determining whether alimony, child support, or attorney’s fees are appropriate, and if so, in what amounts.
 

 The child support guidelines require income to be imputed on a monthly basis to an unemployed or underemployed parent, where the parent’s work status is found to be voluntary rather than the result of circumstances beyond the parent’s control.
 
 See
 
 § 61.30(2)(b), Fla. Stat. (2005);
 
 Smith,
 
 737 So.2d at 643, 645. In such instances of voluntary underemployment, the statute states:
 

 [T]he employment potential and probable earnings level of the parent shall be determined based upon his or her recent work history, occupational qualifications, and prevailing earnings level in the community; however, the court may refuse to impute income to a primary residential parent if the court finds it necessary for a parent to stay home with the child.
 

 So long as these statutory factors are properly taken into account, the trial court has discretion to impute income in the amount the parent was earning before voluntarily reducing his or her income.
 
 Smith,
 
 737 So.2d at 645. Appellant challenges the evidentiary basis for the trial court’s imputing to him a net monthly income of $8,123.00.
 

 Without question, Appellant used to earn substantially more when he worked in the Middle East. It is undisputed that during Appellant’s decades of employment as a Middle East regional sales manager for Michelin, the parties enjoyed a very lavish lifestyle and spent generously for travel, jewelry, and other gifts. The parties were married in 1985 and lived most of their married years in the Middle East. Appellant was assigned primarily to Michelin’s operations in Kuwait and Jordan, although his work required him to travel sometimes to other countries, including Dubai, Iraq, Turkey, Poland, and Russia. Michelin paid Appellant a gener
 
 *783
 
 ous base salary, a monthly housing allowance, and periodic bonuses, all of which averaged about $140,000.00 from 2003 until the expiration of his employment contract in May 2005. His employment with Michelin allowed Appellant to fly first-class and to stay in five-star accommodations. The parties occupied an elegant, three-level townhouse in Kuwait, which rented for approximately $3,500.00 a month. Furnishing that residence cost the parties about $60,000.00. They had a full-time, live-in housekeeper and a driver. They owned two automobiles in Kuwait and a third vehicle in Egypt.
 

 Concerned about the family’s safety and well-being as political unrest escalated in nearby Iraq, and the children’s schools closed in Kuwait, Appellee and the children left Kuwait in early 2003 and eventually settled in Tallahassee. The parties maintained separate households for two years, given Appellant’s decisions to remain in Kuwait until his employment contract expired in 2005 and to deal with the parties’ Middle Eastern real properties, other personal belongings, and mounting debts. Appellant joined his family in Tallahassee in 2005, shortly before Appellee served the petition to dissolve the marriage.
 

 Appellee’s employment history is markedly different from Appellant’s, partly due to Michelin’s corporate culture and Middle Eastern cultural factors (about which testimony was adduced) limiting women’s employment outside the home and partly due to Appellant’s approval of Appellee’s working as a homemaker and caring for the children during most of the parties’ marriage. Appellee has a B.A. degree in English literature from the University of Alexandria and recently obtained a master’s degree in business administration through an on-line university. Her only employment experience outside the home (before filing the dissolution petition) was two years’ work as a teacher’s aide at an American school in Kuwait. Since filing the petition, Appellee has obtained employment with the United States Postal Service as a mail carrier. Due to an on-the-job injury, restrictions keep Appellee from working more than 24 hours per week at a rate of $17.00 an hour. As a part-time employee, Appellee receives no benefits. Given Appellee’s education, the trial court determined she is capable of obtaining full-time employment. Her work-related injury is not permanent.
 

 Appellant has a B.S. degree in agricultural science and is fluent in English, French, and Arabic. In recent years, he developed kidney cancer, which required the removal of one kidney. Appellant testified that he needed follow-up visits to a cancer treatment center in Tampa to ensure that no new cancer appeared. Appellant testified that his medical condition would not prevent him from working in a managerial or administrative capacity. His current annual income is $35,000.00 from his employment as a car salesman. The trial court found that Appellant has not diligently searched for employment commensurate with his education level and work experience. Apparently relying on the evidence relating to Appellant’s well-paying employment with Michelin in Kuwait, the trial court imputed a net monthly income of $8,123.00 to Appellant.
 

 Appellant testified that his monthly salary at Michelin was $6,000. However, he acknowledged also receiving a monthly housing allowance of $1,100 KD (Kuwait dinars, equating to approximately $3,960.00) and periodic bonuses. Other competent, substantial evidence demonstrated how much Appellant earned — a base salary, housing allowance, and bonuses totaling an average of $140,000 yearly from 2003 until May 2005 — while working
 
 *784
 
 in a managerial capacity for Michelin in the Middle East, which supported the parties’ admittedly lavish lifestyle. However, the uncontradicted evidence showed that Appellant’s 25-year employment contract with Michelin expired and that he moved to Tallahassee from the Middle East to join his family shortly before Appellee filed the June 2005 petition to dissolve the marriage. No evidence was presented regarding the current, prevailing earnings level and the potential source(s) or amount of income in the pertinent community for purposes of imputing income to Appellant. Appellant testified without contradiction that he was earning a substantially lower salary in Tallahassee, approximately $33,000.00, than he had earned with Michelin in Kuwait. He testified that his obvious foreign accent hindered some of his employment prospects.
 

 Appellant testified that in the past twelve months, he had applied for work with “maybe five, six” employers via the Internet. The record does not suggest that Appellant is automatically precluded from working with Michelin in the future; in fact, he sent his resume to Michelin’s head office in South Carolina. Although competent, substantial evidence demonstrated that Appellant had made little effort to find higher-paying employment over the past two years in North Florida, no evidence in the record supports the trial court’s decision to impute income to Appellant in the amount stated in the final judgment. Appellant’s very favorable employment terms with Michelin are inextricably linked to economic conditions and cultural circumstances halfway around the world from Tallahassee, and under the terms of a time-limited contract. Although it is reasonable for the trial court to infer that Appellant’s management experience, education, and foreign language skills justify a higher salary than his current work pays, no competent, substantial evidence was presented to allow the trial court to determine what that amount is. Accordingly, without a full and proper inquiry, it was an abuse of discretion to impute income to Appellant in the substantial amount determined by the trial court.
 
 See Porter,
 
 873 So.2d at 541;
 
 Lee v. Lee,
 
 751 So.2d 741, 743-44 (Fla. 1st DCA 2000);
 
 Robinson v. Robinson,
 
 713 So.2d 437 (Fla. 2d DCA 1998).
 

 Because the amount imputed to Appellant as income must be reversed and remanded for further evidence and findings, the trial court’s other findings and conclusions based on the parties’ respective incomes must be reversed and remanded for further proceedings and findings.
 
 See Swain,
 
 932 So.2d at 1215 (allowing trial court to impute income for purposes of determining child support and alimony).
 

 III. Alimony
 

 Although Appellee demonstrated entitlement to permanent, periodic alimony, the reversal of the amount imputed to Appellant as income compels reversal of the amount awarded as alimony and a remand for further proceedings addressing alimony.
 
 See Swain,
 
 932 So.2d at 1216. The parties’ 22-year marriage is considered “long-term,” which raises a rebutta-ble presumption of entitlement to alimony.
 
 See Ondrejack v. Ondrejack,
 
 839 So.2d 867, 870-71 (Fla. 4th DCA 2003). Section 61.08(2)(g), Florida Statutes (2005), which deals with alimony, requires the trial court to consider “all relevant economic factors,” including “[a]U sources of income available to either party” as well as “any other factor necessary to do equity and justice between the parties.” Subsection (1) of this statute states that “[t]he court may consider the adultery of either spouse and the circumstances thereof in determining the amount of alimony, if any, to be awarded.” Subsection (2)(a) of this statute re
 
 *785
 
 quires the trial court to consider “[t]he standard of living established during the marriage.” The payor spouse’s earning-capacity, and not just current income, is to be considered, along with the payee spouse’s needs, in determining ability to pay alimony.
 
 See Smith,
 
 737 So.2d at 643;
 
 Platt v. Platt,
 
 103 So.2d 253, 255 (Fla. 1st DCA 1958). An award and amount of alimony must be supported by findings:
 

 In determining actual income for purposes of awarding alimony, the trial court must set forth factual findings regarding a spouse’s probable and potential level of earnings, the source of actual and imputed income, and any adjustments to income.... While the basis for imputing income and the ability to pay obligations may be inferred from the circumstances of the case, ... the source of income and the amount imputed must be supported by the evidence.
 

 Smith,
 
 737 So.2d at 643. Responding to Appellant’s complaints about the headings under which various factual findings are placed in the final judgment, Appellee notes that
 
 Canakaris v. Canakaris,
 
 382 So.2d 1197, 1202 (Fla.1980), instructed appellate courts to review the trial courts’ rulings as a whole, rather than each ruling independently, in dissolution of marriage proceedings. While the trial court must consider the lavish marital standard of living, this is but one factor among several to be weighed, including the payor spouse’s current ability to pay and the payee’s present financial needs, in crafting an equitable alimony award.
 
 See Noah v. Noah,
 
 491 So.2d 1124, 1127 (Fla.1986);
 
 Beers v. Beers,
 
 724 So.2d 109, 113 (Fla. 5th DCA 1998).
 

 IV Child Support
 

 As we have noted, the child support guidelines require income to be imputed on a monthly basis to an unemployed or underemployed parent, where that status is found to be voluntary rather than the result of circumstances beyond the parent’s control.
 
 See
 
 § 61.30(2)(b), Fla. Stat. (2005);
 
 Smith,
 
 737 So.2d at 643, 645. Because the trial court will have to revisit the amount of income to be imputed to Appellant, we are constrained to reverse the child support award and remand for further proceedings.
 
 See Swain,
 
 932 So.2d at 1216.
 

 V Attorney’s Fees and Costs
 

 Section 61.16(1), Florida Statutes (2005), authorizes the trial court to order attorney’s fees and costs “after considering the financial resources of both parties.” Appellant does not challenge the reasonableness of the amount of attorney’s fees and costs awarded to Appellee. However, because this award is based on Appellee’s demonstrated need and Appellant’s ability to pay, the reversal of the imputed income amount compels a reversal of the amount awarded for attorney’s fees and costs and a remand for further proceedings.
 
 See Huntley v. Huntley,
 
 578 So.2d 890, 893 (Fla. 1st DCA 1991) (noting that reconsideration of parties’ incomes in a dissolution of marriage proceeding would require reconsideration of each party’s ability to pay attorney’s fees).
 

 It may well be that the trial court’s reconsideration of the issue of income imputation will not alter the scheme of equitable distribution of assets and liabilities. However, we note that chapter 61, Florida Statutes (2005), invests trial courts with considerable discretion to craft an overall post-dissolution plan as equity and justice require.
 
 See
 
 § 61.075(l)(j), Fla. Stat. (2005);
 
 Beers,
 
 724 So.2d at 115-16.
 

 We AFFIRM the dissolution of the parties’ marriage and the findings relating to the concealment of income and assets and the dissipation of assets. We REVERSE
 
 *786
 
 the awards of alimony, child support, and attorney’s fees and costs and REMAND for the trial court to consider the factors in section 61.80(2)(b) and the
 
 Smith
 
 line of decisions and to make specific findings in resolving the threshold issue of imputed income and the ultimate issues of alimony, child support, and attorney’s fees and costs.
 

 WOLF and BENTON, JJ., concur.