2010 OK CIV APP 74

**In re the Marriage of Tanya D. PAR-NELL, Petitioner/Appellee,**

v.

**Jerry M. PARNELL, Respondent/Appellant.**

**No. 106,904.**

Court of Civil Appeals of Oklahoma, Division No. 4.

June 25, 2010.

Jack Mattingly, Jr., The Mattingly Law Firm, P.C., Seminole, OK, for Petitioner/Appellee.

W.S. Haselwood, Shawnee, OK, for Respondent/Appellant.

DOUG GABBARD II, Presiding Judge.

¶ 1 In this divorce action, Respondent, Jerry M. Parnell (Husband), appeals the trial court's decisions regarding child support, ali-

mony, and property division. We affirm as modified.

## FACTS

¶2 Petitioner, Tanya D. Parnell (Wife), and Husband were married in 1995. They had three children, born in 1996, 1998, and 2005. The parties were divorced in 2008.

¶3 At the time of the divorce, Wife was 30 years old, and had recently started working as a legal secretary for her attorney at a monthly salary of $1,900. She had previously worked as a finance administrator for the county sheriff at the same salary. She testified her salary was not enough to provide for herself and the children, make her $800 mortgage payment, and service the marital debt (in fact, some payments had been missed on the home and a vehicle).

¶4 Husband is only slightly older than Wife.[1] During their marriage, Husband was employed by Baker Hughes, servicing wells. His yearly gross income was $ 92,537 for 2007, and $68,373 for the first eight months of 2008. However, shortly before trial, Husband quit his job and began working as a background investigator with the Iowa Tribe Gaming Commission, making $28,392 per year. Husband testified he quit his higher-paying job in order to see his children more consistently, noting that the oilfield job sometimes required him to be on site for days at a time. Wife asserted Husband had "self-imposed" a lower salary in order to avoid alimony and child support. She testified that he failed to see his children for months following their separation despite his stated reason for leaving his higher-paying job, and said that he had told her she "wasn't going to get a dime" from him. She asked the trial court to impute his prior income for purposes of setting both child support and alimony.

¶5 The trial court granted the divorce and awarded custody of the children to Wife, with Husband receiving visitation. Relevant to this appeal, the trial court: (1) ordered Husband to pay $2,054.29 per month as child support, after finding that he quit his former job as a "trial strategy" and imputing to him a monthly income of $10,315.41; (2) awarded Wife $60,000 in support alimony, payable at the rate of $1,000 per month for five years; (3) divided the marital property by awarding Wife the couple's home, household goods, and personal belongings, her Pontiac G6 automobile, her retirement plan, and an IRS check of $2,100, and awarding Husband his Mustang automobile, his Baker Hughes retirement account, and any personal property in his possession; and (4) granted Wife a $7,731 judgment for amounts Husband had failed to pay under a temporary order. Husband appeals.

## STANDARD OF REVIEW

¶6 An action for divorce, alimony, and division of property is one of equitable cognizance, and the trial court's judgment will not be disturbed on appeal unless found to be clearly contrary to the weight of the evidence. *Carpenter v. Carpenter,* 1983 OK 2, 657 P.2d 646. The burden of proof is upon the party filing the appeal to show that the trial court's findings and judgment are against the clear weight of the evidence. *Kiddie v. Kiddie,* 1977 OK 69, 563 P.2d 139; *Peterson v. Peterson,* 1952 OK 25, 240 P.2d 1075.

## ANALYSIS

### 1. Child Support

¶7 As noted above, the trial court calculated child support based on Husband's "prior income" at Baker Hughes because Husband "quit his job while he was making $10,315.41 per month as a trial strategy." This resulted in Husband paying significantly more than if the court had used his current monthly salary ($2,366).

¶8 Oklahoma follows the rule that "equity will normally not favor reduction of a child support obligation where the parent's financial condition is due to his/her fault, or voluntary wastage or dissipation of his/her talents and assets." *State ex rel. Dep't of*

---

1. The record does not reveal Husband's age, but he testified that he graduated from high school in a year previous to Wife.

*Human Servs. v. Baggett*, 1999 OK 68, ¶ 23, 990 P.2d 235, 244. Title 43 O.S. Supp.2009 § 118B (D)(2) specifically allows trial courts to impute income to a spouse in determining child support, if it is equitable. In doing so, courts may consider a number of factors: (a) "whether a parent has been determined by the court to be willfully or voluntarily under-employed or unemployed," taking into consideration the impact of additional training or education; (b) "when there is no reliable evidence of income"; (c) a parent's "past and present employment"; (d) a parent's "education, training, and ability to work"; (e) a parent's lifestyle; (f) a parent's role as caretaker of a handicapped or seriously ill child or relative of the parent; or (g) any additional factors deemed relevant to the particular circumstances of the case.

¶ 9 Oklahoma courts have decided several cases where income was imputed to a spouse for child support purposes. In *Andersen v. Fellers*, 1998 OK CIV APP 53, 960 P.2d 851, the Court affirmed a case where a father asserted his $5,284 monthly income had dropped dramatically because he had started working fewer hours, and the trial court had imputed his higher income after finding he had intentionally reduced his income to avoid child support. In *Stephen v. Stephen*, 1997 OK 53, 937 P.2d 92, the Supreme Court reversed the trial court's decision to impute $50,000 as a mother's income after she quit her job to take the children out of public school and home school them, because there was no evidence of any intent to affect child support. Finally, in *Minnich v. Minnich*, 1995 OK CIV APP 60, 898 P.2d 747, a mother changed jobs, resulting in her yearly income dropping from $45,000 to $33,500. The trial court imputed the higher figure, and the Court of Civil Appeals affirmed, noting that the evidence was disputed and the trial court was in the best position to resolve the dispute. *Id.* at ¶ 7, 898 P.2d at 750.

¶ 10 In the instant case, Husband stated that he quit his higher paying job in order to spend more time with his children.[2] Wife testified that Husband told her she "wasn't going to get a dime from him," and she noted that the timing of Husband's job change, occurring after the divorce was filed and shortly before trial, was consistent with an intent to reduce support. She alleged that Husband's excuse for leaving his former job was rebutted by his own conduct in failing to see his children for several months following the parties' initial separation.[3]

¶ 11 When the evidence, as here, is conflicting, we defer to the judgment of the trial court, which is in the best position to observe the behavior and demeanor of the witnesses and to judge their credibility. *See Mueggenborg v. Walling*, 1992 OK 121, ¶ 7, 836 P.2d 112, 114; *Brown v. Brown*, 1993 OK CIV APP 142, ¶ 3, 867 P.2d 477, 478. Thus, we find no error in the trial court's factual findings and its decision to impute to Husband his former income.

■ ¶ 12 However, the court did not explain how it arrived at the $10,315.41 figure. It may have taken Husband's $4,760.96 gross income as shown on his pay stub for the two-week period ending August 15, 2008, multiplied that amount by 26 (the number of pay periods in a year), arriving at a figure of $123,784.96, and then divided that figure by 12 months, for the monthly total of $10,315.41. If it calculated Husband's income in this manner, it erred. Imputing income based upon a single high paycheck did not result in a fair approximation of Husband's actual wage potential.[4]

¶ 13 Husband's 2007 income was $92,537. His Baker Hughes pay stubs for the first eight months of 2008 were introduced. Using only those stubs, his 2008 income could have been estimated at $102,560.37. However, the stubs reflect substantial variations in monthly income due in part to seasonal or other fluctuations in the oil and gas industry,

---

2. Although Husband also testified he had injured his shoulder while working for his former employer, he did not say he quit his job because of this injury.

3. She also alleged that he spent money inappropriately, citing a trip he took to Las Vegas.

However, we do not find this evidence particularly relevant to the issue of imputation of income.

4. Almost all his other paychecks for 2008 were for less than $4,000, and one was $2,210.

and, therefore, estimating income based only upon those pay stubs would be, at best, speculative. For this reason, we conclude that the trial court should have used Husband's 2007 income for the purpose of determining child support. Accordingly, we modify the child support award to $1,697.84 per month.[5]

## 2. Alimony

¶ 14 Husband also asserts the alimony award of $1,000 a month for five years was not supported by the evidence.

■■ ¶ 15 Although alimony is based on a number of factors, two factors have long been most important: the *need* of the party requesting support alimony, and the *ability to pay* of the other spouse. *See Wood v. Wood*, 1990 OK CIV APP 49, ¶ 14, 793 P.2d 1372, 1376. In determining need, courts may consider the following:

> [D]emonstrated need during the post-matrimonial economic readjustment period; the parties' station in life; the length of the marriage and the ages of the parties; the earning capacity of each spouse; the parties' physical condition and financial means; the mode of living to which each spouse has become accustomed during the marriage; and evidence of a spouse's own income-producing capacity and the time necessary to make the transition to self-support.

*McLaughlin v. McLaughlin*, 1999 OK 34, ¶ 13, 979 P.2d 257, 260–61 (footnote omitted); *see also Ray v. Ray*, 2006 OK 30, ¶ 10, 136 P.3d 634, 636.

¶ 16 Here, Wife was behind in her bills and was having great difficulty in supporting herself and the children;[6] the parties had been married for 13 years and were in their early 30's; Husband's earning capacity was substantially greater than Wife's; the parties' joint income during the marriage had been substantial and had given them a comfortable mode of living; and although Wife received much of the marital property, it was not income-producing and had large debt. It is reasonable to conclude that Wife might need a substantial period to make the transition to self-support. In fact, Wife's evidence demonstrated that her income was insufficient to support herself and the children, even with child support, and that alimony would help cushion the economic impact of her post-marriage transition.[7]

¶ 17 We find no error in the trial court's implicit conclusion that Wife established the need for alimony. However, while Husband has some ability to pay alimony, he does not have the ability to pay the amount awarded if only his present income is considered. For this reason, it is clear that the trial court imputed income in making its alimony award. While Oklahoma law specifically authorizes the imputation of income for purposes of setting child support, neither the statutes nor prior case law specifically authorize the imputation of income for support alimony purposes. Thus, the trial court's authority to impute income in this manner raises a question of first impression.

■ ¶ 18 Other states which have addressed this issue have concluded that alimony may be based upon imputed income when that income represents a party's earning potential and is otherwise equitable. For example, in *Griffin v. Griffin*, 993 So.2d 1066 (Fla.Ct.App.2008), the Florida Court of Appeal quoted an earlier Florida case for the proposition that "[a] spouse's ability to pay may be determined not only from net income, but also net worth, past earnings, and the

---

5. Pursuant to 43 O.S.2001 § 119, Father's monthly gross income would be $7,711.42; the parties' combined adjusted gross income (AGI) would be $9,611.42; Father's percentage of AGI would be 80.2%; the combined child support for both parents with this income and three children would be $1,749; and Father's base child support would be $1,402.70. Total child care expenses are listed as $368, and Father's share would be $295.14. Thus, his total child support under this calculation is $1,697.84.

6. In fact, after the divorce was filed, a vehicle had been repossessed and the family home had been close to foreclosure.

7. Wife specifically sought alimony so that she would be able to make the house payment, reduce her debt, and refinance her loan in a few years.

value of the parties' capital assets." *Id.* at 1068. It further stated:

> In determining the amount of alimony based on the payor spouse's income, a court may impute income when it is shown that a party is capable of earning more than he or she is currently earning. *Leonard v. Leonard*, 971 So.2d 263, 266 (Fla. 1st DCA 2008) (quoting *Ritter v. Ritter*, 690 So.2d 1372, 1374 (Fla. 2d DCA 1997)). In *Smith v. Smith*, [737 So.2d 641, 644 (Fla. 1st DCA 1999) ], this court held that:
>
> > [a] trial court can impute income where a spouse has failed to use his or her best efforts to earn income. A claim that a payor spouse has arranged his financial affairs or employment situation so as to shortchange the payee spouse is a valid matter to be explored in determining the payor's real ability to pay. When the obligor spouse voluntarily becomes unemployed or underemployed, the income that he or she is capable of earning may be imputed for purposes of determining an appropriate award of support.

*Id.; see also In re Marriage of Cohn*, 65 Cal.App.4th 923, 76 Cal.Rptr.2d 866 (1998); *Storey v. Storey*, 373 N.J.Super. 464, 862 A.2d 551 (N.J.Super.Ct.App.Div.2004); *Griffith v. Griffith*, 959 P.2d 1015 (Utah Ct.App. 1998); *McKee v. McKee*, 52 Va.App. 482, 664 S.E.2d 505 (2008); *Messer v. Messer*, 359 S.C. 614, 598 S.E.2d 310 (S.C.Ct.App.2004) (courts should set alimony based upon a spouse's "earning potential.")

¶ 19 Imputing income for alimony purposes is consistent with Oklahoma law. The Oklahoma Supreme Court has stated that a party's "earning capacity" may be considered in determining one's ability to pay alimony. *Stansberry v. Stansberry*, 1978 OK 77, ¶ 8, 580 P.2d 147, 150; *Durland v. Durland*, 1976 OK 102, ¶ 5, 552 P.2d 1148, 1149. When a spouse deliberately refuses to use his best efforts to obtain employment, or intentionally becomes under-employed to thwart his spouse or former spouse's effort to obtain his financial assistance in transitioning to a separate life, equity may justify imputing income to him.

¶ 20 Based upon all the facts and circumstances in this case, we find no error in the trial court's imputation of income to Husband for purposes of setting alimony. However, the trial court determined alimony based upon an imputed monthly income of $10,315. We have previously determined that Husband' imputed monthly income should have been $7,711. Therefore, after considering the record, we find that the alimony award should be modified to $750 per month for five years.

### 3. Property Division

¶ 21 Husband also asserts the trial court erred in making its property division. Husband asserts that Wife was awarded most of the marital assets, including the home, and he was awarded most of the marital debt. He argues that the trial court should have placed a value on the home, and then required Wife to pay him money in lieu of property settlement to more evenly divide the marital property and debt, pursuant to what is now 43 O.S. Supp.2009 § 121(B).

¶ 22 At trial, the court received conflicting evidence regarding the value of the home ($95,500 by Wife and $120,000 by Husband). However, the court may well have concluded that the home had little equity since the principal balance on the mortgage was $90,000. The trial court awarded the home to Wife and ordered her to pay its mortgage debt. It also gave Wife the home furnishings (valued between $1,800 and $8,405) and its $1,180 debt, the Chevy Tahoe and half its debt or $6,580.30, a $2,100 IRS check, and all of Wife's school loans. Although Husband correctly argues that Wife received most of the marital assets, she also received most of the marital debt (the home mortgage) and did not receive substantial equity, because there was little to receive.[8] While Husband was ordered to pay most of the remaining $30,031 marital debt, he also received his retirement accounts, which were worth

---

8. Although the record is not entirely clear, it appears that Wife received between $14,300 and $46,700, less any school indebtedness.

$12,329 to $18,000 before he withdrew money during the marriage.

¶ 23 The requirement that courts make equitable, fair, and reasonable divisions of the marital estate does not mandate that either spouse be awarded an equal share or even a significant portion of the marital estate. *Manhart v. Manhart*, 1986 OK 12, 725 P.2d 1234. The trial court is in the best position to determine the exigencies of any particular case concerning a division of marital property. *Carpenter v. Carpenter*, 1983 OK 2, 657 P.2d 646. In doing so, the trial court is given wide discretion. *Kiddie v. Kiddie*, 1977 OK 69, 563 P.2d 139.

¶ 24 Here, an equal division of marital assets and debts would have been difficult. There were few marital assets, and total marital debt exceeded total marital equity. Moreover, the parties greatly differed in their ability to pay the debt. If the court had ordered Wife to pay Husband alimony in lieu of property settlement to more evenly divide the marital estate, it is not clear that Wife could have done so without a corresponding increase in alimony. All things considered, we find no error in the trial court's property division.

¶ 25 Finally, Husband asserts the trial court erred in awarding Wife a $7,731.10 judgment for sums he failed to pay under a September 3, 2008, temporary order.[9] The trial court found that Husband only paid $500 pursuant to the order, but Husband asserts that he made more payments than he was given credit for.

¶ 26 The evidence was conflicting as to how much Husband paid for child support and alimony *before* entry of the September 3, 2008, temporary order. However, Husband *admitted* that *after* the order was entered he only paid $500 in alimony and nothing in child support. Thus, we find no error in the amount of the judgment.

9. This order is not a part of the appellate record, but according to Wife's undisputed testimony, the parties agreed to a temporary order requiring Husband to pay about $1,700 a month in child

**CONCLUSION**

¶ 27 For the reasons set forth above, the decree of divorce is hereby affirmed in all respects, except as modified herein. Husband's request for appellate attorney fees is denied.

¶ 28 AFFIRMED AS MODIFIED.

GOODMAN, J., concurs, and RAPP, J., not participating.

support and $1,000 in alimony, plus make the house payment. Husband does not now dispute the existence of that temporary order.